UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:13-cr-79 |
| | ) | *Collier/Carter* |
| BOBBY LYNN SMITH | ) | |

REPORT AND RECOMMENDATION

I. Introduction

Defendant Bobby Lynn Smith's motion to suppress evidence of firearms and ammunition seized from his residence [Doc. 10] is before the undersigned Magistrate Judge having been referred for a report and recommendation by the District Court pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C). Defendant Smith is charged with being a felon in possession of firearms and ammunition in violation of 18 U.S.C. § 922(g)(1). At the time of the search in question, defendant was on probation and had agreed previously to the warrantless search of his residence as a condition of probation. Finding that there was no violation of his Fourth Amendment rights when the search in question occurred, it is RECOMMENDED defendant's motion to suppress be DENIED.

II. Facts

An evidentiary hearing was held on defendant's motion to suppress on October 29, 2013. Schultzie Skiles and Roger Lee Dodson, both probation officers for the Tennessee Department of Corrections, testified. Sgt. Jake Brewer of the Bledsoe County, Tennessee Sheriff's Department also testified. No other witnesses were presented.

1

On or about March 28, 2012, defendant entered a plea of guilty in Bledsoe County, Tennessee to the felony drug crime of promotion of methamphetamine in violation of state law. Defendant did not receive a jail sentence; he was, however, sentenced to a term of probation. In lieu of receiving jail time and obtaining probation instead, defendant agreed to certain conditions of probation. These conditions, which Probation Officer Roger Lee Dodson reviewed one by one with the defendant, were enumerated in a probation "order." One of the conditions was that defendant agree "to a search, without a warrant, of my person, vehicle, property, or place of residence by any Probation/Parole officer or law enforcement officer, at any time." (Doc. 16-1, Page ID # 52). Dodson testified he was especially careful to review this particular condition with defendant. Dodson asked defendant if he understood the conditions of his probation as he reviewed them with him, and defendant said he did. Defendant then signed the "probation order." This "order" was not signed by a judge. *See* Gov. Ex. 1. Dodson and Skiles testified probation "orders" are usually not signed by a judge, and they still enforce them.

On or about August 29, 2013, defendant's case was transferred to Probation Officer Schultzie Skiles' case load. Skiles met with defendant five times at the Bledsoe County Courthouse as part of her supervision of him. Dodson told Skiles he had reviewed the terms of defendant's probation with defendant and that defendant had said he understood those terms.

Skiles attempted to make a home visit with defendant in October 2012 and one in November 2012, but defendant was not present. Then, in March of 2013 during one of defendant's visits to her office, she field tested defendant, and he was positive for amphetamine and methamphetamines. She then had samples provided by defendant sent to the laboratory and they also came back positive for said substances.

On or about April 26, 2013, at 3:30 pm, Skiles made a home visit to defendant to verify his address and see if there were any drug issues. Because defendant had tested positive for illegal drugs in March, she asked Sgt. Brewer to accompany her for safety reasons. She informed Brewer of defendant's previous drug conviction, his testing positive for amphetamines and methamphetamines, and that his condition of probation permitted warrantless searches. Brewer and four other officers drove to the defendant's trailer home. Skiles, who was not carrying a firearm, rode with Brewer, and the other officers arrived in separate vehicles. As they arrived, a woman, later identified as Amanda Dodd, was in another vehicle, accompanied by an infant, leaving the driveway. She stopped and remained in the driveway when the officers pulled into the driveway.

Skiles and Brewer approached the 60 foot long, single wide trailer where defendant resided. They knocked on the door, and defendant opened it. Skiles told defendant she needed to come inside, look around, and verify that he lived there. Defendant said "OK" and stepped back to let them in. Brewer, who has received extensive training in processing and breaking down methamphetamine labs and has handled at least 50 methamphetamine labs, testified that immediately upon the door opening he could smell the unique, acrid smell of a "one pot" methamphetamine lab. Skiles, Brewer and another officer, Angelo Oreto, stepped inside and saw a male sitting on the couch in the living room area. Skiles asked to see the bedroom to verify defendant had clothes there and his own bed.

Upon smelling what he thought was a methamphetamine lab and seeing the man sitting on the couch, Brewer became concerned for their safety, and he asked defendant if there were firearms in the trailer. Defendant said there was a gun on the bedpost, and he showed them to the bedroom where a pistol hanging from a holster was draped over a bedpost. Defendant

3

indicated there were more firearms in the bedroom closet.  Brewer found two shotguns, a rifle, and ammunition in the closet.  In the bedroom he also found a propane torch, still warm, which is commonly used to smoke methamphetamine.  In addition, Brewer saw a plastic bag peaking out from under the mattress.  He recovered the bag and saw what he believed to be, and what later tested positive as, methamphetamine.

Defendant was escorted back to the living room where he sat on the couch with the other male.  Brewer asked the defendant and the other man if they had a methamphetamine lab in the trailer or in the locked shed located on the premises.  Neither would answer the question.  Brewer exited the trailer to talk to Amanda Dodd who told him there were two (one) pot labs in the shed that was locked.  Brewer went back inside to ask defendant for a key.  Defendant said he had no key but that Brewer could break down the door if he wanted.

Subsequently, the officers did break down the shed door and found two coolers, each containing a one pot methamphetamine lab, one active and one inactive.  They also found ingredients for more methamphetamine labs.  Both Skiles and Brewer testified that defendant never attempted to revoke his consent to search, defendant was never handcuffed, and they did not raise their voices to anyone.  Further, no officer unholstered his firearm.  Skiles testified that if defendant had refused the search, she would have left and begun the paperwork for a probation violation.   Brewer testified that if defendant had refused the search, he would have left and applied for a search warrant.

4

Case 1:13-cr-00079-CLC-WBC   Document 18   Filed 11/13/13   Page 4 of 8   PageID #: 58

III. Analysis

Defendant argues the search of his residence which revealed the firearms and ammunition must be suppressed because Skiles and Brewer did not have reasonable suspicion to believe that evidence of a crime would be found in his residence.[1] Citing *United States v. Herndon*, 501 F.3d 683, 688 (6th Cir. 2007), defendant contends that a warrantless search of a probationer's residence, where the probationer has given consent as a condition of his probation, will pass Fourth Amendment muster only if there is reasonable suspicion to believe that evidence of a crime will be found in the residence.[2] In *United States v. Herndon,* 501 F.3d 683 (6th Cir. 2007), the Sixth Circuit examined the extent to which the Fourth Amendment protected the privacy rights of a probationer who had, as a condition of his probation, agreed to warrantless searches of his residence by his probation officer.

> The Fourth Amendment bars unreasonable searches and seizures by the government. U.S. Const. amend. IV. "A probationer's home, like anyone else's, is protected by the Fourth Amendment's requirement that searches be 'reasonable.' " *Griffin v. Wisconsin*, 483 U.S. 868, 873, 107 S.Ct. 3164, 97 L.Ed.2d 709 (1987). However, the Supreme Court has made clear that the nature of the relationship between state actors and individuals subject to state supervision in lieu of or following release from prison alters the relevant analysis under the Fourth Amendment.

---

[1] Defendant's motion to suppress does not seek suppression of anything but the firearms and ammunition; however, for the reasons stated *infra*, the undersigned concludes the evidence found in the shed was also legally obtained.

[2] The government argues that reasonable suspicion may not be necessary for a warrantless search of a probationer's residence given the Supreme Court's decision in *Samson v. California*, 547 U.S. 842, 859 (2006) wherein the Supreme Court held that the "Fourth Amendment does not prohibit a police officer from conducting a suspicionless search of a parolee." (*See* government's response brief at pp. 9-12, Page ID # 44-47). However, the government concedes this holding may not apply to a probationer who may have a greater expectation of privacy than a parolee. In any event, it is unnecessary for the undersigned to address this issue since I conclude Skiles and Brewer had the requisite reasonable suspicion, as will be discussed *infra*, when they searched defendant's residence and shed.

5

*Herndon*, 50 F.3d at 687. The government bears the burden to show a warrantless search meets constitutional muster. *Id.* at 692. Noting the diminished expectation of privacy possessed by a probationer who has agreed to warrantless searches as a condition of his probation and the government's substantial interest in monitoring a probationer's activities to protect the public and discourage recidivism, the *Herndon* court concluded that reasonable suspicion is all the Fourth Amendment requires to conduct a warrantless search of a probationer's residence where the probationer has agreed to warrantless searches as a condition of his probation. *Id.* at 688-91, *see also United States v. Knights*, 534 U.S. 112, 121 (2001) ("[w]hen an officer has reasonable suspicion that a probationer subject to a search condition is engaged in criminal activity, there is enough likelihood that criminal conduct is occurring that an intrusion on the probationer's significantly diminished privacy interest is reasonable"); *United States v. Seigle*, 628 F.Supp.2d 784, 797 (E.D. Tenn. 2008) (Phillips, J.) ("a warrantless search of a probationer who has given consent as part of his probation satisfies the Fourth Amendment if there is reasonable suspicion of criminal activity.")

The instant case meets all the *Herndon* requirements to find the search at issue complies with Fourth Amendment strictures. First, defendant was on probation. Second, Probation Officer Dodson carefully reviewed defendant's conditions of probation, especially the warrantless search condition, with defendant before he agreed to it. Defendant said he understood the condition and, I find, he knowingly and voluntarily agreed "to a search, without a warrant, of my person, vehicle, property, or place of residence by any Probation/Parole officer or law enforcement officer, at any time." Since the issue is consent, the undersigned finds the lack of a judge's signature on the probation "order" to be immaterial. Defendant understood the warrantless search condition and he agreed to it. Third, the moment defendant opened the door,

while Sgt. Brewer was still standing outside, Sgt. Brewer could smell the acrid, distinctive odor of a methamphetamine cook. Brewer also knew the defendant had been convicted of promoting methamphetamine in violation of Tennessee state law and that a month earlier defendant had tested positive for methamphetamine and amphetamines. Based on the odor, the conviction involving methamphetamine and the positive methamphetamine drug test just a month earlier, Sgt. Brewer had ample specific and articulable facts upon which to find reasonable suspicion to believe evidence of a crime would be found in the residence. *See Herndon*, 501 F.3d at 691 (to determine whether reasonable suspicion exists, a court must conduct a totality of the circumstances review of each case "to see whether the detaining officer has a particularized and objective basis for suspecting legal wrongdoing.") Similarly, after Amanda Dodd told Brewer there were two methamphetamine labs in the shed, he had more than reasonable basis to search the shed and a warrant was not required.[3]

---

[3] Defendant makes no distinction between a search conducted by Sgt. Brewer and one conducted by Probation Officer Skiles, and I find there is none since the probation condition to which defendant agreed permitted a warrantless search by probation officers as well as by law enforcement officers. In *Herndon*, the court held a warrantless search by the probationer was supported by agreement to the probation conditions and reasonable suspicion whereas seizure of evidence by police officers was justified under the plain view doctrine. However, in *Herndon*, the defendant consented to "your Officer checking your computer…at any time…" where "your officer" referred to the defendant's *probation* officer. *See Herndon*, 501 F.3d at 685. In this case, there is no such restriction to searches by probation officers only; defendant Smith also consented to warrantless searches by law enforcement officers which, by definition, would include Sgt. Brewer.

7

Case 1:13-cr-00079-CLC-WBC   Document 18   Filed 11/13/13   Page 7 of 8   PageID #: 61

For the reason stated herein, it is RECOMMENDED[4] defendant's motion to suppress be DENIED.

S/*William B. Mitchell Carter*
UNITED STATES MAGISTRATE JUDGE

---

[4]Any objections to this Report and Recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 59(b)(2) of the Federal Rules of Criminal Procedure. Failure to file objections within the time specified waives the right to appeal the District Court's order. *Thomas v. Arn*, 474 U.S. 140, 88 L.Ed.2d 435, 106 S. Ct. 466 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive or general. *Mira v. Marshall*, 806 F.2d 636 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Federation of Teachers*, 829 F.2d 1370 (6th Cir. 1987).